Zachary Nightingale (California Bar #184501)
Marc Van Der Hour (California Bar # 217431)
Avantika Shastri (California Bar # 233453)
Van Der Hout, Brigagliano & Nightingale, LLP
180 Sutter Street, Fifth Floor
San Francisco, California 94104
Telephone: (415) 981-3000
Facsimile: (415) 981-3003

Attorneys for Petitioners
Khushi SHARMA
Joytika SHARMA
Prashant SHARMA

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

C 07 5237

| | |
|---|---|
| SHARMA, Khushi<br>SHARMA, Joytika<br>SHARMA, Prashant<br><br>Petitioners,<br><br>v.<br><br>Nancy ALCANTAR, in her Official Capacity, Director San Francisco Office of Detention and Removal, U.S. Immigration and Customs Enforcement; Julie MEYERS, Assistant Secretary of the Department of Homeland Security for U.S. Immigration and Customs Enforcement; Michael CHERTOFF, Secretary, Department of Homeland Security; Peter D. KEISLER, Acting Attorney General, Department of Justice; Kevin OHLSON, Director, Executive Office of Immigration Review, Department of Justice.<br><br>Respondents. | DHS Nos. A 78-657-611<br>A 78-657-612<br>A 78-657-613<br><br>Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND FOR WRIT OF MANDAMUS** |

Pet. for Writ of Habeas Corpus

No:

## **INTRODUCTION**

1. Petitioners Khushi SHARMA, Joytika SHARMA, and Prashant SHARMA ("Petitioners"), by and through their undersigned counsel, hereby file this petition for a writ of habeas corpus to enjoin Respondents (Department of Homeland Security, "DHS") from ordering deportation and from ordering detention, and this petition for writ mandamus to compel Respondents (Department of Justice, "DOJ") to adjudicate Petitioners' Motion to Reopen based on Ineffective Assistance of Counsel and Request for Stay of Removal.  Petitioners are currently facing imminent removal from the United States to Fiji without ever having received a full and fair hearing on their applications for asylum from Fiji, attached to that motion to reopen.

2. Petitioners Mr. and Ms. Sharma are a husband and wife, and Prashant is their eight year old son.  They are citizens of Fiji.  Mr. and Ms. Sharma also have a second son, Prashneet, who is seven years old and a United States citizen.  The family currently resides in Richmond, California, where they rely on the support of lawful permanent resident and United States citizen family members.  Petitioners have never been arrested or convicted of any crimes.

3. Petitioners affirmatively applied for asylum in 1999, within approximately one year of entering the United States, and have sought to pursue those applications, with the assistance of retained counsel, for the past eight years.  However, unbeknownst to them until earlier this year, their three prior counsel provided ineffective assistance in Petitioners' prior proceedings.  Their prior counsel thereby prevented Petitioners from receiving full and fair hearings on their applications for asylum.  Specifically, in their initial applications for asylum and during their Immigration Court proceedings, prior counsel failed to present relevant and material evidence in support of Mr. Sharma's application for asylum, which is based on the fact that he had been beaten to unconsciousness by the Fijian police and constantly threatened and harassed by indigenous Fijians on account of his Hindu and South Asian background.  Prior counsel also failed entirely to investigate, identify, or present a separate application for asylum on behalf of Ms. Sharma, even though she had also been assaulted and threatened with rape in their home by indigenous Fijians on the same basis.  These fundamental errors were never corrected while their cases were on appeal before the Ninth Circuit Court of Appeals, and their removal orders were

1    therefore upheld by the Ninth Circuit.

2        4.  However, once Petitioners learned of these errors, they diligently filed a motion to
3    reopen based on the ineffective assistance of prior counsel before the Board of Immigration
4    Appeals ("BIA" or "Board"). Their motion to reopen and request for a stay of removal was filed
5    on April 19, 2007. Almost six months later, neither the motion nor the request for stay has been
6    adjudicated, despite the fact that the government failed to oppose the motion for four months and
7    Petitioners filed a motion to expedite the adjudication of their motion after one month.

8        5.  On October 10, 2007, after voluntarily appearing at DHS for a surrender
9    interview, DHS – in lieu of physically taking Petitioners into custody – placed them on orders of
10   supervision, took possession of their passports, placed them on the Intensive Supervision
11   Appearance Program ("ISAP"), and ordered them to purchase airline tickets and to depart within
12   one week (October 17, 2007) to Fiji. U.S. ICE has scheduled Petitioners' deportation for
13   Wednesday, October 17, 2007, despite the fact that the Board has not ruled on either their motion
14   to reopen or their request for stay of removal.

15       6.  If Petitioners are physically removed from the U.S., the Board will dismiss their
16   motion to reopen for lack of jurisdiction. 8 C.F.R. § 1003.2(d). Additionally, if Petitioners are
17   forced to return to Fiji, they will be considered to have abandoned their asylum applications
18   because they returned to the country of claimed persecution. 8 C.F.R. § 208.8(b).

19       7.  If Petitioners are removed, they will be denied the opportunity to pursue their
20   asylum applications and have them adjudicated on the merits. The asylum statute, the
21   withholding of removal statute, the implementing regulations of the Convention Against Torture,
22   Article 33.1 of the United Nations Convention Relating to the Status of Refugees, and Due
23   Process all require an opportunity to raise a fear of persecution and torture before a removal order
24   is executed.

25       8.  A writ of habeas corpus and an injunction is required in Petitioners' case to stay
26   deportation until the Board rules on Petitioners' pending motion. Without this Court's enjoining
27   of Respondents DHS from deporting the Petitioners, the Petitioners will be denied their right to
28   seek a determination of their asylum applications on the merits, as they will have forfeited this

1    right if they are removed.  See 8 C.F.R. § 1003.2(d).

2    9.    A Petition for Writ of Mandamus is appropriate in the instant case because the Board's delay is unreasonable.  Petitioners filed a motion to reopen based on ineffective assistance of counsel and a request for stay of removal on April 19, 2007.  Almost six months later, the Board has yet to rule on either the motion or the request for stay.  Furthermore, the motion remained <u>unopposed</u> for almost four months, far longer than the 13 day period permitted for filing responses to motions.  The Board has been on notice of the urgency of Petitioners' case since April of 2007, when the request for stay was filed.  Additionally, Petitioners submitted a motion to expedite the adjudication of the pending motion and request for stay on September 25, 2007.  Despite having been on notice for six months, the Board has yet to rule.

10.   Petitioners seek an order from this Court barring their deportation and detention, and ordering that Respondents DOJ (the Board) render a decision on Petitioners' motion to reopen.

**JURISDICTION**

11.   This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1361, the mandamus statute; 28 U.S.C. § 1331, general federal question jurisdiction; 5 U.S.C. §§ 701 <u>et seq.</u>, the Administrative Procedure Act (the "APA"); and habeas jurisdiction pursuant to 28 U.S.C. § 2241 <u>et seq.</u>; Art. I, § 9, Cl. 2 of the United States Constitution ("the "Suspension Clause"); and the common law.

**VENUE**

12.   Venue is properly with this Court pursuant to 28 U.S.C. § 1391(e) because the Respondents are employees or officers of the United States, acting in their official capacity, and an agency of the United States; because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of California; because Petitioners have been ordered to surrender for deportation on October 17, 2007 by the San Francisco Office of Detention and Removal, which is in the jurisdiction of the Northern District of California; and because

Petitioners reside in the Northern District of California and there is no real property involved in this action.

## INTRADISTRICT ASSIGNMENT

13. The decision to hold Petitioners in custody or order them deported is under the control of the San Francisco office of Respondents DHS. Therefore, assignment to the San Francisco or Oakland Division of this Court is proper under N.D. Rule 3-2(d).

## PARTIES

14. Petitioners are natives of Fiji who have lived continuously in the United States since September 1999. They reside in Richmond, California.

15. Respondent Nancy ALCANTAR is sued in her official capacity as the Director of the Office of Detention and Removal in San Francisco, California. Upon information and belief, Ms. Alcantar is responsible for decisions on requests for stay of removal and for the execution of removal orders for non-citizens within the jurisdiction of the San Francisco office of U.S. Immigration and Customs Enforcement.

16. Respondent Michael CHERTOFF is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In his capacity, he has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 401 of the Homeland Security Act of 2002, 107 Pub. L. 296, 116 Stat. 2135 (Nov. 25, 2002), see also 8 U.S.C. § 1103.

17. Respondent Julie MYERS is sued in her official capacity as the Assistant Secretary of the Department of Homeland Security for U.S. Immigration and Customs Enforcement. In her official capacity, she has responsibility for the administration and enforcement of the immigration laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. 296, 116 Stat. 2135 (Nov. 25, 2002). See also Armentero v. INS, 340 F.3d 1058 (9th Cir. 2003)

18. Respondent Peter KEISLER is sued in his official capacity as the Attorney

General of the United States and as the head of the United States Department of Justice. He has responsibility for the administration and enforcement of the immigration laws pursuant to 8 U.S.C. § 1103, Immigration and Nationality Act ("INA") § 103. As the Immigration and Nationality Act has not been amended to reflect the designation of the Secretary of the Department of Homeland Security as the administrator and enforcer of immigration laws, Respondent KEISLER is sued in his official capacity to the extent that 8 U.S.C. § 1102 gives him the authority to over immigration law. Armentero v. INS, 340 F.3d 1058 (9th Cir. 2003).

19. Respondent Juan OSUNA is sued in his official capacity as the Acting Chairman for the Board of Immigration Appeals. He has the responsibility for overseeing the Board's principal mission is to ensure that the immigration laws receive fair and uniform application.

20. The United States of America.

### FACTUAL ALLEGATIONS

21. Petitioners Mr. Sharma and Ms. Sharma are husband and wife. Petitioner Prashant Sharma is their eight year old son. All three Petitioners are citizens of Fiji. Mr. and Ms. Sharma also have a second son, Prashneet, who was born in the United States and is currently seven years old. Petitioners reside in Richmond, California, with or near to numerous lawful permanent resident and citizen relatives, including Mr. Sharma's mother and sister. Petitioners entered the United States on a visitor's visa on September 3, 1999. See Declaration of Zachary Nightingale in Support of Petition for Writ of Habeas Corpus and Writ of Mandamus ("Dec. ZN") at Exh. A.

22. On September 20, 1999, Petitioners applied for asylum with the assistance of an immigration consultant, whom they erroneously believed to be an immigration attorney. See Dec. ZN at Exh. A, p. 103. Their application for asylum, as prepared by the consultant, was based solely on the persecution experienced by Petitioner Mr. Sharma in Fiji. See Dec. ZN at Exh. A. In preparing the application, the consultant did not include the full extent of information provided to him by Mr. Sharma regarding his experiences of persecution in Fiji, including the fact that Mr. Sharma had been beaten to unconsciousness in July 1999 by the Fijian police at his store. Id. The consultant included only Mr. Sharma's descriptions of having been regularly harassed and

threatened by indigenous Fijian locals at his store and at Petitioners' home. Id. Notably, the consultant also never investigated or identified that Petitioner Ms. Sharma had also experienced persecution in Fiji. Id. Her persecution was based on shared experiences of harassment and discrimination with Mr. Sharma, as well as her own separate experiences, which included being assaulted in her home and threatened with rape by indigenous Fijians. Id. He therefore never prepared a separate application for asylum on her behalf, and instead listed Ms. Sharma and Prashant as derivatives on the application. Id. Thus, the application presented to the Asylum Officer on behalf of Petitioners was incomplete.

23. On December 8, 2000, following their interview, the Asylum Office referred their case to the Immigration Judge on the grounds that the events described by Mr. Sharma during the interview were credible but did not demonstrate the requisite level of persecution. See Dec. ZN at Exh. A, p. 113.

24. On June 5, 2003, Petitioners appeared before the Immigration Judge, with the assistance of second prior counsel. See Dec. ZN at Exh. A. Second prior counsel supplemented the record but failed to investigate and present critical pieces of available and relevant evidence that corroborated Mr. Sharma's claim to asylum. Second prior counsel also failed to investigate, identify, or present the fact that Ms. Sharma had an independent claim to asylum. During the hearing, only Mr. Sharma testified on the family's behalf. Neither Ms. Sharma, Mr. Sharma's mother, nor Ms. Sharma's sister were presented to corroborate his testimony despite having first-hand knowledge of the facts at issue. Id. Following the hearing, the Immigration Judge denied their application for asylum. See Dec. ZN at Exh. A, p.121. The Immigration Judge found that Mr. Sharma was not credible in regards to his past persecution because his testimony at the hearing was different than his application before the Asylum Officer. The Judge also held that the experiences related by Mr. Sharma did not demonstrate a well-founded fear of persecution. Id. at 121-135.

25. On November 30, 2004, the Board affirmed the Immigration Judge's decision, and on December 8, 2006, the Ninth Circuit Court of Appeals affirmed the Board's decision. See Dec. ZN at Exh. A, p. 139. Petitioners were represented by third prior counsel before the Board

and before the Ninth Circuit in regards to their petition for review. Third prior counsel did not independently investigate the basis for Respondents' claims and instead relied solely on the evidence presented previously. See Dec. ZN at Exh. A.

26. On February 23, 2007, the Ninth Circuit denied Petitioners' petition for rehearing. Petitioners retained fourth prior counsel to file their petition for rehearing. See Dec. ZN at Exh. A, p. 143. While the petition was pending, fourth prior counsel suggested that Petitioners consult with undersigned counsel. See Dec. ZN at Exh. A.

27. In February 2007, Petitioners consulted with undersigned counsel. For the first time, Petitioners learned that their three prior counsel – who represented them before the Asylum Office, the Board, and the Ninth Circuit (on direct appeal) - had provided ineffective assistance in their case by failing to fully investigate and present all relevant and available evidence in Mr. Sharma's case and by failing to investigate and present an independent asylum claim on Ms. Sharma's behalf. See Dec. ZN at Exh. A. Had prior counsel done so, Mr. Sharma would have received a full and fair hearing on his application for asylum. Ms. Sharma also in turn would have received an opportunity to receive a hearing on her own application for asylum, which if granted, would have provided the family an additional opportunity to receive asylum even if Mr. Sharma's application were denied. Id.

28. Thus, on April 19, 2007, Petitioners filed a motion to reopen before the Board demonstrating the ineffective assistance of their prior counsel. See Dec. ZN at Exh. 1. On July 31, 2007, they supplemented their motion to reopen with additional documentation of religious/ethnic persecution against Hindus in Fiji. On or about September 11, 2007, the DHS filed an opposition to the motion to reopen. See Dec. ZN at Exh. B. On or about September 25, 2007, Petitioners filed a reply to the government's untimely opposition and a motion to expedite adjudication of the motion to reopen to the Board.[1] See Dec. ZN at Exh. D. The motion and the request for a stay of removal have not yet been adjudicated. Id.

---

[1] On or about September 19, 2007, Petitioners filed a motion to consider their motion to reopen unopposed, or in the alternative, request for time to respond to the government's untimely opposition to the motion to reopen.

7

No:

Pet. for Writ of Habeas Corpus and Writ of Mandamus

29. On September 14, 2007, Respondents DHS issued a notice to surrender for removal to Fiji. See Dec. ZN at Exh. C. They attended the required surrender interview on October 10, 2007, with counsel and ten lawful permanent resident and United States citizen family members in support. See Dec. ZN at Exh. G. At this interview, Petitioners were issued Orders of Supervision, ordered to submit copies of purchased plane tickets to Fiji by the following day (October 11, 2006), and ordered to depart from the United States by October 17, 2007. Id.; Exh. G; Exh. E. DHS took possession of their passports and placed them on the Intensive Supervision Appearance Program ("ISAP") (in lieu of physical custody) until their removal. See Dec. ZN at Exh. G, F.

30. On October 10, 2007, Petitioners filed an emergency motion to adjudicate their motion to reopen and request for a stay of removal to the Board. See Dec. ZN at Exh. G. They supplemented this motion on October 11, 2007 with additional evidence of their imminent removal. See Dec. ZN at Exh. H. To date, the Board has not adjudicated (or given any evidence of an intent to adjudicate) the motion to reopen, the motion for stay, or the emergency motion to adjudicate.

## CAUSES OF ACTION

### COUNT ONE 1

**REMOVAL OF RESPONDENTS PRIOR TO THE ADJUDICATION OF THEIR MOTION TO REOPEN VIOLATES OF IMMIGRATION AND NATIONALITY ACT AND INTERNATIONAL LAW**

**(ASYLUM, WITHHOLDING OF REMOVAL, CONVENTION AGAINST TORTURE, AND ARTICLE 33.1 OF THE UNITED NATIONS CONVENTION RELATING TO THE STATUS OF REFUGEES)**

31. Paragraphs 1 through 30 are incorporated herein.

32. The Immigration and Nationality Act ("INA") provides that the "Attorney General may not remove an alien to a country if the Attorney General decide that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality,

membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A), INA § 241(b)(3)(A). Petitioners fear returning to Fiji because they fled after suffering persecution on account of their Hindu and South Asian backgrounds. Petitioner Mr. Sharma was beaten unconscious and Petitioner Ms. Sharma was assaulted and threatened with rape on account of their Hindu and South Asian background. However, Petitioners were never able to have their asylum applications adjudicated on the merits, as they were represented by ineffective assistance of counsel and were denied due process.

33. The removal of Petitioners prior to a full and fair adjudication of their asylum claim will force them to "abandon" their applications for asylum. See 8 C.F.R. § 208.8(b) ("An applicant who leaves the United States pursuant to advance parole under § 212.5(f) of this chapter and <u>returns</u> to the <u>country of claimed persecution</u> shall be presumed to have abandoned his or her application…") (emphasis added)

34. Petitioners are entitled to a fair adjudication of their asylum applications. See <u>Campos v. Nail</u>, 43 F.3d 1285, 1289 (9th Cir. 1994) (Holding that were judges routinely denied changes of venue to asylum seekers who had not established a residence in the United States prior to their arrests, "plaintiffs not only were deprived of their statutory and regulatory rights to appear and present evidence at their deportation hearing, but they also suffered interference with their rights to apply for asylum and to secure counsel at no expense to the government."); <u>Azzouka v. Sava,</u> 777 F.2d 68, 76 (2d Cir. 1985) (noting that if a noncitizen is statutorily eligible for asylum he has a right to an asylum hearing.); <u>Haitian Refugee Center v. Smith</u>, 676 F.2d 1023, 1038 (5th Cir. 1982) ("Specifically, we find in the federal regulations establishing an asylum procedure- regulations duly promulgated pursuant to congressional delegation of authority to the Attorney General and having the force and effect of law-, when read in conjunction with the United States' commitment to resolution of the refugee problem as expressed in the United Nations Protocol Relating to the Status of Refugees and in 8 U.S.C. s 1253(h), a clear intent to grant aliens the right to submit and the opportunity to substantiate their claim for asylum."); <u>Chun v. Sava</u>, 708 F.2d 869, 877 (2d Cir. 1983) (The Court held that despite the limited protections of procedural due process in the context of excludable aliens, the Court found because of their statutory right to

asylum, procedural due process entitled stowaways to asylum hearings before immigration judges.)

35. Petitioners' motion to reopen for ineffective assistance of counsel describes the manner in which Petitioner Mr. Sharma's application for asylum was not fully presented to the Immigration Judge and that Petitioner Ms. Sharma's application was not presented at all. See Dec. ZN at Exh. A. This is inability to present applications for asylum is on account of prior counsel's ineffective assistance. Petitioners are not asking this Court to adjudicate that issue, but to order that Petitioners not be removed so that the Board of Immigration Appeals can adjudicate the motion to reopen on its merits.

36. Removing Petitioners prior to the adjudication of the motion to reopen on precisely the issue of ineffective assistance based failure to present an asylum claim would violate the INA's provision that the Attorney General may not remove Petitioners to the country they are fleeing when it is determined that their life or freedom is threatened on account of one of the protected grounds. In the instant case, Petitioners suffered from ineffective assistance of counsel, a motion that is presently pending before the Board, and thus they have not yet even been provided the opportunity to demonstrate to the Attorney General that they are in individuals for whom it has been determined that their life or freedom would be threatened on account of their Hindu and South Asian backgrounds. See Dec. ZN at Exh. A. At a minimum, they are entitled a hearing a full and fair adjudication of their asylum applications, hearings which were denied to them due to no fault of their own. Petitioners were the victims of unscrupulous and/or lazy and ineffective counsel and the motion to reopen presents just that issue. If Petitioners are removed they will be forced to abandon both their motion to reopen based on ineffective assistance of counsel and their right to have their asylum applications adjudicated on the merits. 8 C.F.R. § 1003.2(d); 8 C.F.R. 208.8(b).

37. The submission of an application for asylum is deemed to also constitute a claim to withholding of removal. 8 C.F.R. § 208.3(b). Petitioners face a clear probability of persecution on account of their ethnic and religious Hindu and South Asian backgrounds. Because Petitioners were unable to present claims of withholding of removal as a result of

ineffective assistance of counsel, removing Petitioners to Fiji without providing them with a full and fair opportunity to present their claims of withholding of removal violates the withholding of removal statute within the INA.

38. The ability of an applicant for asylum and withholding (and CAT) to obtain a hearing or consideration of his or her application before removal is executed is already contained in aspects of United States immigration law. Even individuals in procedurally weaker situations than Petitioners here have such rights. For example, an applicant who has previously been ordered removed and is facing reinstatement of removal (without a removal hearing before an Immigration Court) is eligible for withholding of removal. Likewise, an individual faced with an administrative removal due to an aggravated felony conviction who also is not entitled to a removal proceeding can at least have consideration of his or her withholding and CAT application before the removal is executed. See 8 C.F.R. § 208.31. (Providing aliens who have either been ordered removed under INA § 238(b) or whose removal has been reinstated under INA § 241(a)(5) are entitled to a determination of reasonable fear of persecution or torture). In the instant case, if Petitioners are removed, Petitioner Ms. Sharma will not only be denied the ability to present an asylum application on the merits, she will have also been foreclosed from the opportunity to a determination of reasonable fear. This opportunity is guaranteed to individuals who have been ordered removed and subsequently enter. If such a class of individuals is entitled to a determination of reasonable fear, Petitioners are most certainly entitled an _initial_ full and fair adjudication of their applications for asylum before there order of removal is effectuated.

39. Also, any applicant who is subject to a final order of removal is permitted to present a claim to asylum, withholding of removal, and Convention Against Torture ("CAT") if changes arise in his or her individual circumstances that create a fear of persecution and/or torture upon return to his native country. See 8 C.F.R. § 208.2(b). Petitioners do not even allege changed conditions for a basis upon which to file for asylum, withholding, and protection under CAT. Instead, they are simply exercising and protecting their right to a fair and full adjudication of an application for asylum that was _timely_ in the first place and an application that is not based on making use of exceptions for late filing or prior removal. See Dec. ZN at Exh. A. Where an

individual is permitted to apply for asylum after potentially many years of living unlawfully in the United States, after failing to timely file for asylum, and after having become subject to a final order of removal, Petitioners are undoubtedly entitled to a full and fair adjudication of applications, which but for the ineffective assistance of counsel, could have been favorably adjudicated upon years ago. Id.

40. The United Nations Convention Against and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), as implemented by Pub. L. No. 105-277, § 2242, 112 Stat. 2681-822 (Oct. 21, 1998), states that it shall be the "policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States." See also 8 C.F.R. § 208.16(c).

41. Petitioners face a clear probability of torture on account of their Hindu and South Asian background. See Dec. ZN at Exh. A. Removing Petitioners to Fiji, where they suffered beatings that rendered them unconscious, assaults, and attempted rape, without providing them with the opportunity to a full and fair adjudication of the claim that they more likely than not will suffer torture if removed to Fiji violates the Convention Against Torture, and the regulations codifying CAT at 8 C.F.R. § 208.16(c).

42. Executing a deportation order prior to Petitioners' ability to procure a full and fair hearing on their applications for asylum would violate international law. Article 33.1 of the United Nations Convention Relating to the Status of Refugees, 189 U.N.T.S. 150, 176 (1954), provides: "No Contracting State shall expel or return ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion." I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 429, 107 S.Ct. 1207, 1212, 94 L.Ed.2d 434 (U.S. 1987) citing 189 U.N.T.S. 150, 176 (1954), 19 U.S.T. 6259, 6278, T.I.A.S. No. 6577 (1968). In 1968, the United States agreed to comply with the substantive provisions of Articles 2 through 34 of the 1951 United Nations Convention Relating to the Status of Refugees. I.N.S. v. Cardoza-Fonseca,

480 U.S. 421 at 429, 107 S.Ct. at 1212. Nothing in the Convention Relating to the Status of Refugees disqualifies an applicant from seeking protection after the entry of a final order of removal.[2]

43.  Petitioners' life and freedom are threatened on account of their ethnic and religious background as being Hindu and of South Asian dissent. See Dec. ZN at Exh. A. Removing Petitioners without providing them with a full and fair hearing on such claims violates Article 33.1 of the United Nations Convention Relating to the Status of Refugees.

## COUNT 2

## VIOLATION OF PROCEDURAL DUE PROCESS

44.  Paragraphs 1 through 30 are incorporated herein.

45.  Noncitizens in the United States have a procedural right to Due Process, even when they do not have a substantive constitutional right to remain in the United States. See Wong v. U.S., 373 F.3d at 971 ("aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"). Depriving such individuals of the right to a full and fair hearing to apply for such statutory benefits violates the Fifth Amendment Due Process Clause. See e.g. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268, 74 S.Ct. 499, 504, 98 L.Ed. 681 (1954) (deprivation of statutory right to discretionary "suspension of deportation" based on improper influence from the Attorney General); Rodriguez-Lariz v. I.N.S., 282 F.3d 1218, 1226 (9th Cir. 2002) (deprivation of statutory right to discretionary "suspension of deportation" based on ineffective assistance of counsel).

46.  Removing Petitioners to Fiji without providing them with a full and fair hearing on their fear of persecution and torture in Fiji violates the Due Process Clause.

---

[2] The statute codifying the Convention Relating to the Status of Refugees contemplates a second and successive untimely application based on a change in circumstances "which materially affect the applicant's eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D), INA § 208(a)(2)(D).

13

No:

## COUNT 3

### (MANDAMUS)

47. Paragraphs 1 through 30 are incorporated herein.

48. Mandamus is available to compel a federal official to perform a duty if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available. See Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1997). Once the petitioner has established the prerequisites of mandamus relief, the court may exercise its discretion to grant the writ. Marquez-Ramos v. Reno, 69 F.3d 477, 479 (10th Cir.1995). Defendants have a duty to act and have failed to do so in a reasonable time or manner. See, e.g., Patel v. Reno, 134 F.3d at 933.

49. Regulation 8 C.F.R. § 1003.2(a) vests Petitioners with the right to file a Motion to Reopen based on ineffective assistance of counsel. The right to seek withholding and deportation is not discretionary- and it is this right, along with the right to a full and fair adjudication of their asylum applications which is forms the basis of the motion to reopen.

50. In this case, Respondents have a duty to act (namely adjudicate Petitioners' motion and request for stay) within a reasonable time. Petitioners' motion has been pending at the Board for almost six months (176 days) without any adjudication. As described above, Petitioners filed their motion to reopen on April 19, 2007. This April 2007 filing also entailed a request for stay of removal, and thus the Board was put on notice that Petitioners were subject to removal at any time. See Dec. ZN at Exh. A. On May 2, 2007 (over five months ago), the Board was entitled to review Petitioners' motion as unopposed because Respondents failed to submit any opposition.[3] It was not

---

[3] See 8 C.F.R. § 1003.2(g)(3): If the Motion is filed directly with the Board pursuant to paragraph (g)(2)(i) of this section, the opposing party shall have 13 days from the date of service of the motion to file the brief in opposition to the motion directly with the Board....A motion shall be deemed unopposed unless a timely response is made."

14

No:

Pet. for Writ of Habeas Corpus and Writ of Mandamus

until almost four months later that the Respondents filed an untimely response to the motion to reopen.[4] See Dec. ZN at Exh. D. Respondents failure to adjudicate Petitioners' motion and request for stay where the motion should have been deemed unopposed and where the Board was on notice that Petitioners faced removal at any moment constitutes a failure to act within a reasonable time or manner.

51.  The Board's own regulations create a specific time period for adjudication of a case, whether a direct appeal or a motion to reopen. A case assigned to one Board member should be adjudicated within 90 days. A case assigned to a three member panel of the Board should be adjudicated within 180 days. 8 C.F.R. § 100.1(3)(8)(i). In this case the record was complete upon the filing of the motion, as no timely response from the government was filed. Therefore, even if the case is assigned to a three member panel, the Board must adjudicate the motion by October 16, 2007, which is 180 days after the filing of the motion.

52.  Additionally, Respondents were once again put on notice that an action on Petitioners' motion to reopen and request for stay of removal was of the highest priority when Petitioners filed a motion to expedite (filed on September 26, 2007) based on the family's October 10, 2007 appointment with DHS. See Dec. ZN at Exh. D. This motion explained in detail that Petitioners had received notice that they must appear before ICE on October 10, 2007 for their removal from the United States. Id. The motion again described the imminent harm Petitioners would suffer if they were forced to depart the United States before their motion to reopen had been adjudicated. Id. As such, the Board, which has had all of the information necessary to render its decision and has been put on notice, on multiple occasions, of the family's impending removal. On October 10, 2007, Petitioners faxed and sent by overnight mail (to the Board), an Emergency Motion to adjudicate the pending motion to reopen and pending request for stay of removal. See Dec. ZN at Exh. G. On October 11, 2007, Petitioners faxed and sent by overnight mail

---

[4] Supra, n. 2.

15

No:

Pet. for Writ of Habeas Corpus and Writ of Mandamus

(to the Board) a supplement to the emergency motion, including a copy of their travel itinerary indicating their scheduled departure from the United States on Wednesday, October 17, 2007. See Dec. ZN at Exh. H. As of the date of this filing, the Board has yet to rule on Petitioners motion and request for stay of removal.

53. As demonstrated supra, Petitioners warrant a reopening of their case, as the motion presents evidence of ineffective assistance of counsel and that Respondent (husband)'s application for asylum from Fiji was never fully presented to the Immigration Judge and Respondent (wife)'s application for asylum has never been presented at all. Respondents thus seek only a full and fair hearing on their motion to reopen (and if granted, their applications for asylum) before they are removed from the United States. Cf. 8 C.F.R. § 1003.2 (deeming a motion to reopen withdrawn if a respondent departs from the United States prior to the motion's adjudication). The Board's refusal to adjudicate Petitioners' application is unreasonable and violates the agency's duties under 5 U.S.C. § 555(b). In addition, given that Petitioners have exhausted all other available remedies and have "no other adequate means to attain the relief he desires," their right to issuance of the writ is therefore "clear and indisputable." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980).

## COUNT 4

**(VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT)**

54. Paragraphs 1 through 30 are incorporated herein.

55. Respondents have violated the Administrative Procedures Act ("APA"), which provides that a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(a). By failing to rule on Petitioners' motion to reopen and request for stay of removal, Respondents have unreasonably delayed agency action and have violated the APA.

56. As described immediately above in Counts 49 and 51, the Board has been on notice since April of 2007, the time of the filing of the motion to reopen and request

for stay of removal, that Petitioners face imminent removal. The convenience and necessity of the parties thus requires the Board to rule on Petitioners' motion prior to their date of ordered removal. Pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 555(b), "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." See Singh v. Ilchert, 784 F. Supp. 759 (N.D. Cal. 1992) (holding that the INS did not unreasonably delay in its adjudication of applications for temporary employment authorization); Fraga v. Smith, 607 F. Supp. 517, 421 (D. Or. 1985) (applying the APA to INS adjudication of applications for naturalization).

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioners pray that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare Respondents' actions to be contrary to the Immigration and Nationality Act, the Convention Against Torture, Article 33.1 of the United Nations Convention Relating to the Status of Refugees, and violative of Equal Protection and Due Process;

(3) Enjoin Respondents DHS from removing Petitioners;

(4) Order Respondents DHS to keep Petitioners on the ISAP program (the status quo) and to not detain Petitioners;

(5) Order that Respondents DOJ render a decision on Petitioners' Motion to Reopen and Request for Stay of Removal;

(6) Award reasonable costs and attorneys' fees; and

(7) Grant such further relief as the Court deems just and proper.

| | | |
|---|---|---|
| 1 | Dated: October 12, 2007 | Respectfully submitted, |
| 2 | | |
| 3 | | Zachary Nightingale |
| 4 | | Attorney for Petitioners |