Zachary Nightingale (California Bar #184501)
Marc Van Der Hout (California Bar # 217431)
Avantika Shastri (California Bar # 233453)
Van Der Hout, Brigagliano & Nightingale, LLP
180 Sutter Street, Fifth Floor
San Francisco, California 94104
Telephone: (415) 981-3000
Facsimile: (415) 981-3003

Attorneys for Petitioners
Khushi SHARMA
Joytika SHARMA
Prashant SHARMA

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

C 07 5237

| | |
|---|---|
| SHARMA, Khushi<br>SHARMA, Joytika<br>SHARMA, Prashant<br><br>Petitioners,<br><br>v.<br><br>Nancy ALCANTAR, in her Official Capacity, Director San Francisco Office of Detention and Removal, U.S. Immigration and Customs Enforcement; Julie MEYERS, Assistant Secretary of the Department of Homeland Security for U.S. Immigration and Customs Enforcement; Michael CHERTOFF, Secretary, Department of Homeland Security; Peter D. KEISLER, Acting Attorney General, Department of Justice; Kevin OHLSON, Director, Executive Office of Immigration Review, Department of Justice.<br><br>Respondents. | DHS Nos. A 78-657-611<br>A 78-657-612<br>A 78-657-613<br><br>Case No.<br><br>POINTS AND AUTHORITES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION |

P & A in Support of TRO and Prelim. Inj.

No:

TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................... 1

II.   STATEMENT OF THE FACTS AND CASE .................................................................. 2

III.  ARGUMENT ................................................................................................................... 5

    A.    PETITIONERS CLEARLY RAISE SERIOUS LEGAL
          QUESTIONS IN THEIR PETITION FOR WRIT OF HABEAS
          CORPUS AND THEIR PETITION FOR WRIT OF MANDAMUS
          BEFORE THIS COURT. ....................................................................................... 5

         1.    Whether Petitioners' Prior Counsel Committed Ineffective
              Assistance of Counsel and Whether that Ineffectiveness
              Prejudiced Petitioners is a Serious Legal Issue. ......................................... 5

         2.    Whether Petitioners' are Entitled to a Full and Fair
              Adjudication of Their Asylum Application is a Serious
              Legal Inquiry ............................................................................................... 6

         3.    Whether Petitioners are Entitled to a Timely Adjudication
              of Their Motion to Reopen Based on Ineffective Assistance
              of Counsel Raises a Serious Legal Inquiry ................................................ 8

    B.    THE BALANCE OF HARDSHIPS TIPS SHARPLY IN
          PETITIONERS' FAVOR ..................................................................................... 10

IV.  CONCLUSION ............................................................................................................. 12

i

No:

P & A in Support of TRO and Prelim. Inj.

# TABLE OF AUTHORITIES

Federal Cases

Apple Computer Inc v. Formula Int'l, Inc., 725 F.2d 521 (9th Cir. 1984) ........................................3

Azzouka v. Sava, 777 F.2d 68 (2d Cir. 1985) .................................................................................9

Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308 (9th Cir. 1978)................................................................................................................................4, 12

Bridges v. Wixon, 326 U.S. 135 (1945) .........................................................................................12

Campos v. Nail, 43 F.3d 1285 (9th Cir. 1994)................................................................................9

Carbonelle v. INS, 429 F.3d 894 (9th Cir. 2005) ..........................................................................11

Castro-Cortez v. INS, 239 F.3d 1037 (9th Cir. 2001) ....................................................................7

Charan v. Schiltgen, 1997 WL 135938 (N.D. Cal 1997) (unpublished).......................................11

Chin Yow v. U.S., 208 U.S. 8 (1908)..............................................................................................7

Chun v. Sava, 708 F.2d 869 (2d Cir. 1983)...................................................................................10

Dumas v. Gommerman, 865 F.2d 1093 (9th Cir. 1989).................................................................3

Gilder v. PGA Tour, Inc., 936 F.2d 417 (9th Cir. 1991)................................................................3

Haitian Refugee Center v. Smith, 676 F.2d 1023 (5th Cir. 1982)..................................................9

Henderson v. I.N.S., 157 F.3d 106 (2d Cir.1998) ........................................................................10

Iturribarria v. INS, 321 F.3d 899 (9th Cir. 2003)..........................................................................7

Landon v. Plasencia, 459 U.S. 21 (1982).......................................................................................7

Lin v. Ashcroft, 377 F.3d 1014 (9th Cir.2004) ...........................................................................7, 8

Lopez v. INS, 775 F.2d 1015 (9th Cir. 1985)..............................................................................7, 8

Los Angeles Memorial Coliseum Commission v. National Football League, 634 F.2d 1197 (9th Cir. 1980)...............................................................................................................................11

Magallanes-Damien v. I.N.S, 783 F.2d 931 (9th Cir. 1986) ......................................................7, 8

Maravilla Maravilla v. I.N.S., 381 F.3d 855 (9th Cir. 2004) ....................................................7, 8

Mohammed v. Gonzales, 400 F.3d 785 (9th Cir. 2005)..................................................................7

Mojica v. Reno, 970 F.Supp. 130 (E.D.N.Y.1997) .......................................................................10

National Ctr. for Immigrants Rights v. I.N.S, 743 F.2d 1365 (9th Cir. 1984) ...............................4

Ugwoezuonu v. Schiltgen, 1997 WL 142804 (N.D. Cal. 1997) (unpublished) ............................11

i

No:

P & A in Support of TRO and Prelim. Inj.

<u>Agency Decisions</u>

Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988)..........................................................................

<u>Federal Statutes</u>

112 Stat. 2681-822 (Oct. 21, 1998) ..........................................................................................9
8 U.S.C. § 1231(b)(3)(A) ..........................................................................................................8
8 U.S.C. s 1253(h) ....................................................................................................................9
Pub. L. No. 105-277 ..................................................................................................................9
U.S. Const. Amend. V...............................................................................................................7

<u>Federal Regulations</u>

8 C.F.R. § 1003.1(e)(8) ...........................................................................................................10
8 C.F.R. § 1003.2(d) .....................................................................................................3, 10, 12
8 C.F.R. § 208.16(c) ..................................................................................................................9
8 C.F.R. § 208.8(b) ............................................................................................................3, 12

ii

No:

P & A in Support of TRO and Prelim. Inj.

I.     INTRODUCTION

Petitioners Khushi SHARMA, Joytika SHARMA, and Prashant SHARMA ("Petitioners'), by and through their undersigned counsel, hereby file this motion for temporary restraining order and preliminary injunction to stop their removal. <u>Petitioners are scheduled to be removed to Fiji on October 17, 2007.</u> See Declaration of Zachary Nightingale in Support of Petition for Writ of Habeas Corpus and Writ of Mandamus ("Dec ZN") at Exh. E. Petitioners will suffer irreparable harm if this Court does not stay their removal. See Fed. R. Civ. P. 65(b).

A motion for temporary restraining order should be issued if "immediate and irreparable injury, loss, or irreversible damage will result to the applicant" if the order does not issue. Fed. R. Civ. P. 65(b). Petitioners have been attempting to pursuing a timely filed asylum for over seven years, however, they were unable to have Petitioner Mr. Sharma was unable to have a full adjudication of his application on the merits and Petitioner Ms. Sharma was prevented from presenting any application on the merits due the ineffective assistance of prior counsel. See Dec. ZN at Exh. A.

Denial of the motion here would result in the enforcing of an order of deportation <u>prior</u> to a ruling on a pending motion to reopen to the Board based on due process violations. See Dec. ZN at Exh. A. If Petitioners are physically removed prior to the adjudication of their motion to reopen based on ineffective assistance of counsel will result in the Board's dismissal of their motion to reopen for lack of jurisdiction (8 C.F.R. § 1003.2(d)). Petitioners will also have been deemed to have abandoned their asylum applications because they returned to the country of claimed persecution. 8 C.F.R. § 208.8(b). Finally, if Petitioners are physically removed from the U.S. prior to the ruling on their motion to reopen, they will have been denied the opportunity to an adjudication of their asylum applications on their merits.

The standard for granting a temporary restraining order requires the moving party to show <u>either</u> (1) a probability of success on the merits and the possibility of irreparable harm, <u>or</u> (2) that serious legal questions are raised and the balance of hardships tips sharply in the movant's favor. <u>Gilder v. PGA Tour, Inc.</u>, 936 F.2d 417 (9th Cir. 1991); <u>Dumas v. Gommerman</u>, 865 F.2d 1093, 1095 (9th Cir. 1989); <u>Apple Computer Inc v. Formula Int'l, Inc.</u>, 725 F.2d 521, 525 (9th Cir.

1

No:

P & A in Support of TRO and Prelim. Inj.

1984). These two alternatives represent extremes of a single continuum, rather than two separate tests. Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 315 (9th Cir. 1978) cert. dismissed, 441 U.S. 937, 60 L. Ed. 2d 667 (1979). Thus, the greater the relative hardship to the moving party, the less probability of success must be shown. National Ctr. for Immigrants Rights v. INS, 743 F.2d 1365, 1369 (9th Cir. 1984)).

As discussed thoroughly below, Petitioners warrant a temporary restraining order and preliminary injunction to prevent Respondents from removing Petitioners to Fiji until his petition and writ can be fully heard by this Court. Petitioners raise serious legal questions regarding a number of issues whether prior counsel committed ineffective assistance of counsel and whether that ineffectiveness prejudiced Respondents. See Dec. ZN at Exh. A. Because the BIA will lose jurisdiction over their motion to reopen if they are deported and would, thus, deny the motion, and because Petitioners would be deemed to have abandoned their asylum applications, the balance of hardships clearly tips sharply in their favor.

II.     STATEMENT OF THE FACTS AND CASE

Petitioners Mr. Sharma and Ms. Sharma are husband and wife. Petitioner Prashant Sharma is their eight year old son. See Dec. ZN at Exh. A. All three Petitioners are citizens of Fiji. Mr. and Ms. Sharma also have a second son, Prashneet, who was born in the United States and is currently seven years old. Petitioners reside in Richmond, California, with or near to numerous lawful permanent resident and citizen relatives, including Mr. Sharma's mother and sister. Id. Petitioners entered the United States on a visitor's visa on September 3, 1999. Id.

Respondents are of ethnic Indian and (religious) Hindu background. Id. On September 20, 1999, Petitioners applied for asylum with the assistance of an immigration consultant, whom they erroneously believed to be an immigration attorney. See Dec. ZN at Exh. A at p. 103. Their application for asylum, as prepared by the consultant, was based solely on the persecution experienced by Petitioner Mr. Sharma in Fiji. See Dec. ZN at Exh. A. In preparing the application, the consultant did not include the full extent of information provided to him by Mr. Sharma regarding his experiences of persecution in Fiji, including the fact that Mr. Sharma had

2

No:

P & A in Support of TRO and Prelim. Inj.

1  been beaten to unconsciousness in July 1999 by the Fijian police at his store. Id. The consultant
2  included only Mr. Sharma's descriptions of having been regularly harassed and threatened by
3  indigenous Fijian locals at his store and at Petitioners' home. Id. Notably, the consultant also
4  never investigated or identified that Petitioner Ms. Sharma had also experienced persecution in
5  Fiji. Id. Her persecution was based on shared experiences of harassment and discrimination with
6  Mr. Sharma, as well as her own separate experiences, which included being assaulted in her home
7  and threatened with rape by indigenous Fijians. Id. He therefore never prepared a separate
8  application for asylum on her behalf, and instead listed Ms. Sharma and Prashant as derivatives
9  on the application. Thus, the application presented to the Asylum Officer on behalf of Petitioners
10 was incomplete.

11     On December 8, 2000, following their interview, the Asylum Office referred their case to
12 the Immigration Judge on the grounds that the events described by Mr. Sharma during the
13 interview were credible but did not demonstrate the requisite level of persecution. See Dec. ZN
14 at Exh. A, p. 113.

15     On June 5, 2003, Petitioners appeared before the Immigration Judge, with the assistance
16 of second prior counsel. See Dec. ZN at Exh. A, p. 121. Second prior counsel supplemented the
17 record but failed to investigate and present critical pieces of available and relevant evidence that
18 corroborated Mr. Sharma's claim to asylum. See Dec. ZN at Exh. A. Second prior counsel also
19 failed to investigate, identify, or present the fact that Ms. Sharma had an independent claim to
20 asylum. Id. During the hearing, only Mr. Sharma testified on the family's behalf. Neither Ms.
21 Sharma, Mr. Sharma's mother, nor Ms. Sharma's sister were presented to corroborate his
22 testimony despite having first-hand knowledge of the facts at issue. Id. Following the hearing,
23 the Immigration Judge denied their application for asylum. See Dec. ZN at Exh. A, p. 121. The
24 Immigration Judge found that Mr. Sharma was not credible in regards to his past persecution
25 because his testimony at the hearing was different than his application before the Asylum Officer.
26 The Judge also held that the experiences related by Mr. Sharma did not demonstrate a well-
27 founded fear of persecution. See Dec. ZN at Exh. A, p. 121-135.
28

3

P & A in Support of TRO and Prelim. Inj.                                                                  No:

On November 30, 2004, the Board affirmed the Immigration Judge's decision, and on December 8, 2006, the Ninth Circuit Court of Appeals affirmed the Board's decision. See Dec. ZN at Exh. A, p. 136, 143. Petitioners were represented by third prior counsel before the Board and before the Ninth Circuit in regards to their petition for review. See Dec. ZN at Exh. A. Third prior counsel did not independently investigate the basis for Respondents' claims and instead relied solely on the evidence presented previously. Id.

On February 23, 2007, the Ninth Circuit denied Petitioners' petition for rehearing. Petitioners retained fourth prior counsel to file their petition for rehearing. See Dec. ZN at Exh. A. While the petition was pending, fourth prior counsel suggested that Petitioners consult with undersigned counsel. Id.

In February 2007, Petitioners consulted with undersigned counsel. Id. For the first time, Petitioners learned that their three prior counsel – who represented them before the Asylum Office, the Board, and the Ninth Circuit (on direct appeal) - had provided ineffective assistance in their case by failing to fully investigate and present all relevant and available evidence in Mr. Sharma's case and by failing to investigate and present an independent asylum claim on Ms. Sharma's behalf. Id. Had prior counsel done so, Mr. Sharma would have received a full and fair hearing on his application for asylum. Ms. Sharma also in turn would have received an opportunity to receive a hearing on her own application for asylum, which if granted, would have provided the family an additional opportunity to receive asylum even if Mr. Sharma's application were denied.

Thus, on April 19, 2007, Petitioners filed a motion to reopen before the Board demonstrating the ineffective assistance of their prior counsel. Id. On July 31, 2007, they supplemented their motion to reopen with additional documentation of religious persecution against Hindus in Fiji. See Dec. ZN at Exh. B. On or about September 11, 2007, the DHS filed an opposition to the motion to reopen. On or about September 25, 2007, Petitioners filed a reply to the government's untimely opposition and a motion to expedite adjudication of the motion to

4

No:

P & A in Support of TRO and Prelim. Inj.

1   reopen to the Board.[1]  See Dec. ZN at Exh. D.  The motion and the request for a stay of removal
2   have not yet been adjudicated.
3         On September 14, 2007, DHS issued a notice to surrender.  See Dec. ZN at Exh. C.  They
4   attended the required surrender interview on October 10, 2007, with undersigned counsel and ten
5   lawful permanent resident and United States citizen family members in support.  See Dec. ZN at
6   Exh. G.  At this interview, Petitioners were issued Orders of Supervision, ordered to submit
7   copies of purchased plane tickets to Fiji by the following day (October 11, 2006), and ordered to
8   depart from the United States by October 17, 2007.  Id.; See Dec. ZN at Exhs. G, E.  DHS took
9   possession of their passports and placed them on the Intensive Supervision Appearance Program
10  ("ISAP") (in lieu of physical custody) until their removal.  See Dec. ZN at Exh. G; Exh. F.
11        On October 10, 2007, Petitioners filed an emergency motion to adjudicate their motion to
12  reopen and request for a stay of removal to the Board.  See Dec. ZN at Exh. G.  They
13  supplemented this motion on October 11, 2007 with additional evidence of their imminent
14  removal.  See Dec. ZN at Exh. H.

III. ARGUMENT

    A.    PETITIONERS CLEARLY RAISE SERIOUS LEGAL QUESTIONS IN THEIR PETITION FOR WRIT OF HABEAS CORPUS AND THEIR PETITION FOR WRIT OF MANDAMUS BEFORE THIS COURT.

        1.    Whether Petitioners' Prior Counsel Committed Ineffective Assistance of Counsel and Whether that Ineffectiveness Prejudiced Petitioners is a Serious Legal Issue.

The Due Process Clause of the Fifth Amendment protects aliens in immigration proceedings and includes the right to a full and fair hearing.  U.S. Const. Amend. V.; Landon v. Plasencia, 459 U.S. 21, 32-33 (1982); Chin Yow v. U.S., 208 U.S. 8 (1908); Castro –Cortez v. INS, 239 F.3d 1037 (9th Cir. 2001).  The right to a full and fair hearing encompasses the right to effective assistance of counsel.  Specifically, ineffective assistance of counsel in deportation (or

---

[1] On or about September 19, 2007, Petitioners filed a motion to consider their motion to reopen unopposed, or in the alternative, request for time to respond to the government's untimely opposition to the motion to reopen.

5

removal) proceedings is a denial of due process under the Fifth Amendment if the ineffective assistance rendered the proceeding fundamentally unfair. Maravilla Maravilla, 381 F.3d 855, 858 (9th Cir. 2004); Magallanes-Damien v. INS, 783 F.2d 931 (9th Cir. 1986); Lopez v. INS, 775 F.2d 1015, 1017 (9th Cir. 1985); Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988).

Under this Court's case law, ineffective assistance of counsel claims require two showings. First, a petitioner must demonstrate "that counsel [failed to] perform with sufficient competence." Maravilla Maravilla, 381 F.3d at 858, citing Lin v. Ashcroft, 377 F.3d 1014, 1027 (9th Cir.2004); see also Mohammed v. Gonzales, 400 F.3d 785, 793 (9th Cir. 2005). Second, she must show that she was prejudiced by counsel's performance. See id., citing Iturribarria v. INS, 321 F.3d 899, 900 (9th Cir. 2003). To demonstrate prejudice, Petitioners must only demonstrate that she had plausible grounds for relief. Lin v. Ashcroft, 377 F.3d at 1027; Maravilla Maravilla, 381 F.3d at 858, 859. This Court ruled that it "need not conclude that [petitioner] would win or lose on any claims, only that his claims merit full consideration by the BIA." Lin v. Ashcroft, 377 F.3d at 1027. Individuals who are able to demonstrate that their counsel failed to perform with sufficient competence and that they were prejudiced by such ineffectiveness, have a claim to a reopening of proceedings to pursue relief.

Because Petitioners were prevented from presenting their applications for asylum, they were denied the right to a full and fair hearing and the proceedings were rendered fundamentally unfair. Maravilla Maravilla, 381 F.3d at 858 (9th Cir. 2004); Magallanes-Damien v. INS, 783 F.2d 931 (9th Cir. 1986); Lopez v. INS, 775 F.2d 1015, 1017 (9th Cir. 1985); Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988). It is this precise issue which has been pending at the Board for six months.

        2.        Whether Petitioners' are Entitled to a Full and Fair Adjudication of Their Asylum Application is a Serious Legal Inquiry

Petitioners' motion to reopen is predicated on a claim of ineffective assistance of counsel; namely that Petitioners were prevented from having a full and fair adjudication of their applications for asylum. See Dec. ZN at Exh. A. Petitioner Mr. Sharma was not able to fully present his claim and Petitioner Ms. Sharma was denied presenting her claim all together. Id.

6

No:

P & A in Support of TRO and Prelim. Inj.

1  The asylum statute, the withholding of removal statute, the implementing regulations of the
2  Convention Against Torture, Article 33.1 of the United Nations Convention Relating to the Status
3  of Refugees, Due Process, and case law, all require an opportunity to raise a fear of persecution
4  and torture before a removal order is executed.

5  The Immigration and Nationality Act ("INA") provides that the "Attorney General may
6  not remove an alien to a country if the Attorney General decide that the alien's life or freedom
7  would be threatened in that country because of the alien's race, religion, nationality, membership
8  in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A), INA § 241(b)(3)(A).
9  Petitioners fear return to Fiji because they fled after suffering persecution on account of their
10 Hindu and South Asian backgrounds. See Dec. ZN at Exh. A. Petitioner Mr. Sharma was
11 beaten unconscious and Petitioner Ms. Sharma was assaulted and threatened with rape on account
12 of their Hindu and South Asian background. Id. However, Petitioners were never able to have
13 their asylum applications adjudicated on the merits, as they were represented by ineffective
14 assistance of counsel and were denied due process. Id.

15 The United Nations Convention Against and Other Cruel, Inhuman, or Degrading
16 Treatment or Punishment ("CAT"), as implemented by Pub. L. No. 105-277, § 2242, 112 Stat.
17 2681-822 (Oct. 21, 1998), states that it shall be the "policy of the United States not to expel,
18 extradite, or otherwise effect the involuntary return of any person to a country in which there are
19 substantial grounds for believing the person would be in danger of being subjected to torture,
20 regardless of whether the person is physically present in the United States." See also 8 C.F.R. §
21 208.16(c). Petitioners face a clear probability of torture on account of their Hindu and South
22 Asian background. See Dec. ZN at Exh. A. Removing Petitioners to Fiji, where they suffered
23 beatings that rendered them unconscious, assaults, and attempted rape, without providing them
24 with the opportunity to a full and fair adjudication of the claim that they more likely than not will
25 suffer torture if removed to Fiji violates the Convention Against Torture, and the regulations
26 codifying CAT at 8 C.F.R. § 208.16(c).

27 Case law also supports the holding that Petitioners are entitled to a fair adjudication of
28 their asylum applications. See Campos v. Nail, 43 F.3d 1285, 1289 (9th Cir. 1994) (Holding that

7

were judges routinely denied changes of venue to asylum seekers who had not established a residence in the United States prior to their arrests, "plaintiffs not only were deprived of their statutory and regulatory rights to appear and present evidence at their deportation hearing, but they also suffered interference with their rights to apply for asylum and to secure counsel at no expense to the government."); Azzouka v. Sava, 777 F.2d 68, 76 (2d Cir. 1985) (noting that if a noncitizen is statutorily eligible for asylum he has a right to an asylum hearing.); Haitian Refugee Center v. Smith, 676 F.2d 1023, 1038 (5th Cir. 1982) ("Specifically, we find in the federal regulations establishing an asylum procedure- regulations duly promulgated pursuant to congressional delegation of authority to the Attorney General and having the force and effect of law-, when read in conjunction with the United States' commitment to resolution of the refugee problem as expressed in the United Nations Protocol Relating to the Status of Refugees and in 8 U.S.C. s 1253(h), a clear intent to grant aliens the right to submit and the opportunity to substantiate their claim for asylum."); Chun v. Sava, 708 F.2d 869, 877 (2d Cir. 1983) (The Court held that despite the limited protections of procedural due process in the context of excludable aliens, the Court found because of their statutory right to asylum, procedural due process entitled stowaways to asylum hearings before immigration judges.)

        3.     **Whether Petitioners are Entitled to a Timely Adjudication of Their Motion to Reopen Based on Ineffective Assistance of Counsel Raises a Serious Legal Inquiry**

If Petitioners are removed before the Board adjudicates their motion to reopen for ineffective assistance of counsel, the Board will dismiss Petitioners' motion for lack of jurisdiction. 8 C.F.R. § 1003.2(d). Petitioners will lose their remedy to restore the right to seek asylum from Fiji without ever having had the opportunity to have their applications fully and fairly adjudicated.

According to the regulations, the Board is supposed to promptly issue decision on the merits as soon as practicable, with a priority for cases or custody appeals involving detained aliens. 8 C.F.R. § 1003.1(e)(8). Specifically, in cases where a single Board member is making the decision, he or she must adjudicate cases within 90 days of the completion of the record. 8 C.F.R. § 1003.1(e)(8)(i). Cases that are assigned to a three-member panel must be decided within

8

No:

P & A in Support of TRO and Prelim. Inj.

180 days. Id. The Board was notified on numerous occasions that the case was of an urgent nature because of the imminent removal of Petitioners. Furthermore, the Petitioners having issued an order to surrender and having been placed on an order of supervision, are constructively detained for purposes of expediting the adjudication of the motion. See Mojica v. Reno, 970 F.Supp. 130, 164 (E.D.N.Y.1997) ("Where the petitioner is subject to a final order of deportation, the 'custody' requirement is satisfied, particularly where the alien has been released on condition of posting a bond.") (citations omitted); see also Henderson v. I.N.S., 157 F.3d 106, 124 (2d Cir.1998) (noting "that the concept of 'in custody' for habeas purposes has broadened in recent years" and holding that an alien who has been released on bail from INS detention but is subject to a final order of removal satisfied custody requirement.) If the Board wishes to push its time limits, it must adjudicate Petitioners' case by October 16, 2007, one day prior to the date that Petitioners will be physically removed from the country.

District Courts and the Ninth Circuit alike have found it appropriate, in the interest of justice, to enjoin or stay deportation pending the Board's determination of Petitioner's motion to reopen. See Carbonelle v. INS, 429 F.3d 894, 896-897 (9th Cir. 2005) (The Ninth Circuit found that petitioner was the prevailing party, for purposes of EAJA awards, where he filed a petition for writ of habeas corpus, seeking to compel the Board to rule on his motion to reconsider, a stay of deportation until it did so, and a temporary restraining order from the District Court. The Respondents' stipulated to the stay of deportation until the Board ruled and the Court incorporated this stipulation into the order, thus petitioner was deemed the prevailing party.); see also Hope v. BICE, 349 F.Supp. 3d 490 (E.D. N.Y 2004) (District Court postponed "its ruling on Petitioner's claim of ineffective assistance of counsel pending the BIA's determination of Petitioner's motion to reopen the deportation proceedings." The Court further ordered that the stay of deportation remain in effect until the Board rules on the motion. The Court further ruled that in the even that the motion was not granted, Petitioners would be provided an opportunity to re-file the habeas petition pursuant to § 2241); see also Charan v. Schiltgen, 1997 WL 135938 at *5 (N.D. Cal 1997) (unpublished) (While the Court ultimately found that it lacked jurisdiction to hear a claim for relief from an order of deportation, it had previously issued an order staying

9

petitioner's deportation and had also extended the temporary restraining order pending the Board's disposition of Petitioner's motion to reopen. Furthermore, after denying petitioners writ, the Court further stayed petitioner's deportation for an additionally week to allow petitioner time to seek a further say an appeal with the Ninth Circuit); Ugwoezuonu v. Schiltgen, 1997 WL 142804 (N.D. Cal. 1997) (unpublished) (Court granting petitioner's writ of habeas corpus to stay the order of deportation pending a decision by the Board on Petitioner's motion to reopen).

B.     THE BALANCE OF HARDSHIPS TIPS SHARPLY IN PETITIONERS' FAVOR

In balancing hardships, this Court must identify the harms that relief might cause the non-moving party, and weigh them against the threatened injury to the movant. Los Angeles Memorial Coliseum Commission v. National Football League, 634 F.2d 1197, 1203 (9th Cir. 1980). The movant is required to show that the balance of harms tips decidedly towards him for an exercise of discretion on his behalf. Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d at 315.

There is no question that removal would cause severe hardship to Petitioners, for it would "result in the loss 'of all that makes life worth living'." Bridges v. Wixon, 326 U.S. 135, 147, 65 S.Ct. 1443 (1945) (quoting Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492 (1927)). As the Supreme Court has stated:

> Though deportation is not technically a criminal proceeding, it visits a great deal of hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted.

Id. at Exh. 154. The balance of hardships clearly tips sharply in Petitioners' favor. Petitioners' removal to Fiji would cause them and their United States citizen son irreparable harm. If Petitioners are forced to leave the United States, the Board will lose jurisdiction over Petitioners' motion to reopen and, thus the BIA will dismiss the motion to reopen without addressing the merits of their claim to a reopening of their asylum case based on ineffective assistance of counsel. 8 C.F.R. § 1003.2(d). Additionally, Petitioners would be prevented from filing asylum in the future because they will have been deemed to have abandoned their asylum applications by

10

No:

P & A in Support of TRO and Prelim. Inj.

1 virtue of the fact that they returned to the country of claimed persecution.  8 C.F.R. § 208.8(b).

2 Furthermore, if this Court does not stay Petitioners' removal, they will be removed to Fiji
3 where might be separated from their United States citizen son as well as lawful permanent
4 resident and citizen family members, including siblings and Mr. Sharma's elderly mother.
5 Lastly, Petitioners will be removed to a country from which they fled based on brutal beatings,
6 assault, and attempted rape, all without having the opportunity to present an application for
7 asylum and have it adjudicated on its merits.

8 The harm to the government is de minimus.  The Department of Homeland Security can
9 have no legitimate interest in removing Petitioners in a manner contrary to law or before the
10 issues have been fully developed in Court.  Petitioners have no criminal record and no fraudulent
11 conduct.  They reported promptly to the surrender notice as ordered and have been cooperating
12 with the Intensive Supervision Appearance Program ("ISAP") since placed on it.  They were
13 ordered to purchase plane tickets within twenty-four hours of their surrender interview and they
14 complied with those requests as well.  They were ordered to appear for ISAP check-in to prove
15 that the tickets had been purchased and they did that as well.  Petitioners are not a flight risk and
16 they have been responsive and cooperative with every request that ICE has made.  As such, there
17 will be no hardship to the government if the say is granted, and Petitioners remain on the ISAP
18 program.

19 The hardships faced by Petitioners clearly outweigh those of Respondents'. The forced
20 separation from family and loved ones, the loss of considerable community involvement in the
21 United States, and the loss of the opportunity to present a meaningful asylum claim based on
22 horrific beatings and attempted rape tip the scales significantly in Petitioners' favor.  No one will
23 be benefited from destroying the lives of Petitioners' family. The government will suffer no
24 hardship in allowing Petitioners to remain in the United States while they await the final
25 resolution of their case before this Court. Indeed, it is in the government's best interest that
26 Petitioners remain and defend their claim.  Meaningful judicial redress affords the government
27 systemic integrity.

28

11

No:
P & A in Support of TRO and Prelim. Inj.

IV.  CONCLUSION

For all of the above reasons, this Court should find that Petitioners raise serious legal questions, and that the balance of hardships tips sharply in their favor, and before October 17, 2007, stay their removal to Fiji during the pendency of their petition for writ of habeas corpus and writ of mandamus before this Court.

Dated: October 12, 2007

Respectfully submitted,

Zachary Nightingale
Attorney for Petitioners

P & A in Support of TRO and Prelim. Inj.

No: